## Case No. 3,126.

### In re CONRAD.

[3 Leg. Gaz. 331; 8 Phila. 147; 1 Leg. Gaz. Rep. 284; 28 Leg. Int. 324; 4 Am. Law T. 189; 1 Leg. Op. 201; 6 Am. Law Rev. 385.]

Circuit Court, E. D. Pennsylvania. Oct. 2, 1871.

PROMISSORY NOTES—LAW OF PLACE—USURY.

1. Though the notes were drawn, dated, signed and endorsed at Philadelphia, where the drawers and endorser resided, yet, as they were delivered and discounted at New York (not being made with exclusive reference to the laws of either Pennsylvania or New York), the effect was to bring the whole transaction within the dominion of the laws of New York.

.2. The transmission of the proceeds of the notes to the parties at Philadelphia, by means of checks on a New York bank, did not change the place of the transaction, as the notes were placed in New York, discounted there, and the money provided and deposited there: and the checks were only the contemplated means employed to facilitate the receipt of the money by the parties in Philadelphia.

3. As the notes were discounted in New York at usurious rates of interest, and are therefore declared void by the laws of that state, the endorser is not liable, and the claim of indebtedness founded upon said notes is disallowed.

Appeal from the district court for the eastern district of Pennsylvania, in bankruptcy.

In equity. Promissory notes were drawn by Flues & Schatte, residents of Philadelphia, for the accommodation of Peter Conrad, also a resident of that city, who en

dorsed said notes, and had them discounted at usurious rates of interest, by Flues & Co., of New York, receiving the money from them by checks of the latter firm upon a New York bank. Conrad becoming a bankrupt, Flues & Co., presented the notes for proof before the register in bankruptcy, and their allowance was opposed. George M. Dallas, trustee, appealed from the decree of the district court [sustaining the opposition to the proof of the debt].

Charles S. Pancoast and James E. Gowen, for appellant.

Charles H. Sidebotham, for Flues & Co.

McKENNAN, Circuit Judge. There is no ground for contention as to the facts which give rise to the question presented by this appeal. Peter Conrad, the bankrupt, desiring to raise money to meet certain pecuniary liabilities, made an arrangement with Flues & Co. of New York, to obtain it for him there, by the discounting of notes to be drawn for his accommodation by Flues & Schatte, and endorsed by him. The notes were accordingly drawn, endorsed and dated at Philadelphia, where the drawers and endorser resided, and were sent by mail to Flues & Co., who discounted them themselves, at usurious rates of interest, and remitted the proceeds to Flues & Schatte, by their checks on the Manhattan bank, New York. Thirteen of these notes remained unpaid in the hands of Flues & Co., who have presented them for proof before the register in bankruptcy, and their allowance is opposed by the trustee of the estate of the bankrupt.

The question now to be determined is, by the law of which place, New York or Pennsylvania, is the liability of Peter Conrad to be governed. If by the law of New York, his liability is altogether avoided; if by the law of Pennsylvania, it is reduced to the amount actually loaned, with legal interest thereon. As a general rule, the construction and validity of contracts are to be determined by the laws of the place where they are made, unless the parties, by the terms of the contract, had in view a different place. Thompson v. Ketcham, 8 Johns. 193; Cox v. U. S., 6 Pet. [31 U. S.] 202. Thus, where no place of execution is expressed in a note, it will be governed by the law of the place where it is made, but, if it is made payable at a different place, the rate of interest there will be allowed, and it will be governed generally by the law of that place. This was the principle on which Mullen v. Morris, 2 Barr [2 Pa. St.] 85, was determined. But this rule is applicable only to bona fide contracts, to which effect would be given by the laws of the place at which they are to be performed. In Andrews v. Pond, 13 Pet. [38 U. S.] 65, the action was against the endorsers of a bill of exchange, drawn, dated, and negotiated at New York, and payable at Mobile, which was usurious, both by the laws of New York and Alabama. Chief Justice Taney, delivering the opinion of the

court, says: "Now. if this defence is true" (that the contract was not made with reference to the laws of either state, and was usurious by the laws of New York), "and shall be so found by the jury, the question is not which law is to govern in executing the contract, but which is to decide the fate of a security taken upon usurious agreement, which neither will execute. Unquestionably, it must be the law of the state where the agreement was made, and the instrument taken to secure its performance. A contract of this kind cannot stand upon the same principles with a bona fide agreement, made in one place to be executed in another. In such cases, the legal consequences of such an agreement must be decided by the law of the place where the contract was made. If void there, it is void everywhere."

The notes in controversy were not made with exclusive reference to the laws of Pennsylvania or New York; and it is undoubted, that, as usurious contracts in both states, they would not be executed by the laws of either. The only and decisive inquiry then is, where were they made? They were drawn, dated, signed, and endorsed at Philadelphia, where the drawers and endorser resided. But had they any efficacy there? Did they there impose any obligation upon these parties to pay the sums stated on their face? Were they there evidences of indebtedness to any one? Clearly not, because, until they passed out of the hands of the persons who made them, they belonged to them, and did not bind them to pay anything to anybody, and would not sustain any action upon them. They were not contracts, because there was only one party to them. Something else was essential to impress upon them the character and qualities of a contract. That was their transfer to some one else for a valuable consideration. They then became for the first time, promises to pay. Before, they had no legal existence; by that fact, they were brought into life, and invested with the obligation and validity of promissory notes. Now, there was no transfer of these notes in Philadelphia, because, not only was it agreed that the money was to be raised upon them in New York, but they were sent there to Flues & Co., to be negotiated according to the previous arrangement. Until they were delivered to Flues & Co., they could not be negotiated. They were discounted and delivered at New York, and then only was any obligation to pay them imposed upon the drawers and endorsers, and did they become effectual as contracts. The effect, then, is to bring the whole transaction within the dominion of the laws of New York.

In its main features, Ludlow v. Bingham, 4 Dall. [4 U. S.] 47, strikingly resembles the present case. There the notes in question were dated and signed by Bingham, at Philadelphia, where they were also endorsed by the payee, but they were delivered to Duer, in New York, in payment of Bingham's indebtedness to him. Ch. J. McKean, in delivering the unanimous opinion of the court, says: "It appears, then, that although the note was signed in Philadelphia, it was not delivered in Pennsylvania; but that the delivery was made by the order or direction of Henry Knox, the payee, to William Duer, in the city of New York, in pursuance of a contract. and for a valuable consideration. It is certain that the bare signing of a note will not give it efficacy. It may be signed with a view to deliver it to the payee, on his complying with some previous stipulation; so that in case of a refusal, it would become useless, and might be cancelled by the drawer. A note is not, therefore, obligatory and valid, until it has been actually delivered to the party for whose use it is drawn; and as it received its life, existence, and negotiable character at the place where it is so delivered, the law of that place must regulate all its subsequent operations. Hence, we consider the present note, as having taken effect in New York, as being liable to the lex loci of that state (whether depending in positive statutes, or the adoption of the general commercial law), and as exempt from the provisions of our act of Assembly, by which an endorsee is liable to all the equity that the drawer could enforce against the payee." Davis v. Clemson [Case No. 3,630] was ruled by the same principle. Clemson, a resident of Ohio, there drew and endorsed a bill on Suydam. Sage & Co., of New York, and sent it to them to be negotiated for their accommodation. They accepted it, and passed it to the plaintiffs in New York, for a usurious consideration. The court held, that the "bill was blank paper when it was transmitted by Clemson to Suydam, Sage & Co., and after it was accepted by them, it was nothing more than blank paper. It was intended for the benefit of the acceptors, but thus far, there was no liability by the drawer, endorser, or acceptors. No action could be sustained on it. It was then, in contemplation of law, no contract or bill of exchange. Until negotiated, it was, in effect, blank paper." It was, therefore, adjudged that the bill was to be considered as made in New York, and to be governed by the laws of that state. To the same effect are Cook v. Litchfield, 5 Sandf. 337, and numerous other cases, to which it is unnecessary to refer. They uniformly affirm the rule that a bill or note becomes effectual only by negotiation and delivery, that it is to be treated as made at the place where it is so negotiated, and that the law of that place, except in cases of bona fide contracts by which a different place of performance is fixed will govern it.

But it is sought to avert the application of the principles recognized in these cases, by the argument that, as the proceeds of the notes were remitted through the mail to

Flues & Schatte, at Philadelphia, by Flues & Co., by checks on a New York bank, the consideration did not pass, and the usurious act was not complete until the receipt of these checks, and that thus the situs of the transaction was fixed in Philadelphia. The transmission of the checks was the final act of performance by Flues & Co., of an agreement to which Conrad had previously given his assent, and which he had executed by the delivery of the notes to them in New York. Nothing remained to be done on either side to make the transfer of the notes effectual. Whenever Flues & Co. resolved to discount the notes and put the proceeds, in the form of their bona fide checks beyond their control, in course of transmission to Flues & Schatte, through a channel sanctioned as well by commercial usage as by the obvious understanding of the parties, in contemplation of law, the negotiation was complete, and they were the holders of the paper. The notes were placed in New York; they were there discounted; the money for that purpose was provided and deposited there, and the checks were only the contemplated means employed to facilitate Conrad's receipt of it there. There is nothing then, to change New York, as the place of the transaction; and Flues & Co., cannot complain that they are to be governed by the law of their own state. As these notes were discounted in New York, at usurious rates of interest, and are, therefore, declared void by the law of that state, Conrad cannot be made liable as their endorser. The first exception made by the trustee of the bankrupt's estate to the report of the register, is sustained, and it is decreed, that the endorsement by Peter Conrad, of the notes held by Flues & Co., numbered in the record 1 to 13, inclusive, and set forth in their affidavit for proof of debt, be void. and of no effect, and the claim of indebtedness of said Flues & Co., founded upon said notes, be disallowed, and that the costs of this appeal be paid by the appellant.