GRAVES *vs.* HARWOOD.

The defendant, at Lockport, shipped on board a canal boat belonging to the plaintiff, 590 barrels of flour, consigned to C. & C., New-York, at the same time taking from the master of the boat a shipping bill, acknowledging the receipt of 600 barrels, and agreeing to deliver the same as consigned, subject to a charge for freight. The defendant was the absolute owner of the flour until its arrival in New-York. The deficiency of ten barrels was occasioned by an accidental miscount in loading the flour upon the boat, at Lockport, and was not ascertained until the boat arrived at New-York. When the deficiency was ascertained, the consignees demanded of the master of the boat, and he paid them, $60, being $6 per barrel for the ten barrels which were missing. The consignees subsequently accounted with the defendant for the whole 600 barrels. *Held* that the plaintiff might recover of the defendant the $60 thus paid to the consignees, by the master of the boat, in an action for money paid, or money had and received.

*Held also*, that parol evidence was properly received, to show an error or mistake in the bill of lading, as to the quantity of flour shipped.

MOTION to set aside report of referee. The declaration was upon the common money counts, with a count upon an *insimul computassent.*

On the trial before the referee, the following facts appeared. On the 23d day of September, 1847, the defendant, at Lockport, shipped on board the canal boat " William Graves," Capt. Arndt, 590 barrels of flour, and took a shipping bill in the words and figures following :

"Lockport, Sept. 23d, 1847.

Shipped in good order, by H. M. Harwood, on boat William Graves of ——, Capt. Peter Arndt, the following articles, viz.

| Marks. | Articles. | Consignees. |
|---|---|---|
| E. B. Harwood, | 600 barrels Flour. | Clark & Coleman, |
| Valley Mills, | | Commission merchants, |
| Lockport, Genesee. | | New-York. |

Subject to 64c. per barrel to New-York
from Lockport,   .   .   .   .   $384,00
Deduct advance,   .   .   .   .   185,00
                                  ————
                    Capt. Coll.   $199,00

Graves *v.* Harwood.

Which property above specified, I, the said captain, have received in good order, and agree to deliver in like order, without delay, as consigned.          PETER ARNDT."

The captain transported the flour to New-York, and on arriving there delivered a duplicate of the shipping bill to the consignees, which the defendant had forwarded to them by the captain. The consignees received the flour, paying the aforesaid charges thereon, and upon discovering or being told by the captain of the deficiency, they demanded of him, and he paid them, $60, being $6 per barrel for the ten barrels of flour contained in the shipping bill more than had been delivered to the captain, or by him to the consignees. This deficiency was occasioned by an accidental miscount in loading the flour upon the boat at Lockport, which miscount was not ascertained until the flour was partly unloaded in New-York. When this deficiency was discovered, the consignees claimed that it had been lost by the captain on the way. The captain claimed that he had not received it, but paid for it as above stated. It was proved to the satisfaction of the referee that the consignees accounted with the defendant for the 600 barrels of flour, contained in the way bill. It appeared that the plaintiff owned the boat, and that she was run on his account, but that the captain manned and victualed her, and ran her for $180 per month, the plaintiff receiving her earnings. Parol evidence was given to show that there were only 590 barrels of the defendant's flour delivered on the plaintiff's canal boat at the time the shipping bill was made, which evidence was objected to by the defendant's counsel, and the objection overruled and the defendant's counsel excepted. There are some other facts stated in the case, which are sufficiently adverted to in the opinion which follows.

The defendant's counsel objected to the plaintiff's recovering in the action, upon the grounds, among others, that the action, if sustainable at all, should have been brought by and in the name of the witness Peter Arndt; also that the plaintiff, if he could recover at all, could not do so upon the money counts in assumpsit. These objections were overruled, and the defendant excepted. The referee reported in favor of the plaintiff for $68,96.

*F. J. Fithian,* for the defendant.

*W. S. Bishop,* for the plaintiff.

*By the Court,* WELLES, J.    It is insisted on the part of the defendant, that Clark & Coleman, the consignees and owners of the flour, were primarily liable for the payment of the freight, and that the plaintiff should first have exhausted his remedy against them.

It would seem that upon principles of common justice, the plaintiff ought to recover in some form of action, against either the consignor or consignees.   The question is, whether he has a right of action against the defendant, in the form he has adopted. It is a case where the defendant has had the benefit of the payment of the price of the flour by the plaintiff; and if he should be compelled to refund it, complete justice would be done between all the parties concerned.   But such result, however desirable, would cost too much, if it has to be procured at the expense of violating any settled rule of law.   It is proper, therefore, to inquire what were the rights, remedies and liabilities of the plaintiff as a common carrier, in reference to the cargo of flour in question, and the freight for carrying the same, and his relation to the consignor and consignees.

The question who were the parties to the contract of shipping, depends upon who was the owner of the flour at the time the freight was earned.   The rule is, that where the entire property of the goods remains vested in the consignor, he is to be regarded as the party who contracts with the carrier.   (*Angell on the Law of Carriers,* § 495.)   If goods be delivered to a carrier on behalf of the consignee, the property in the goods vests in the consignee upon such delivery to the carrier.   (*Id.* § 497.)

By the arrangement between the consignor and consignees, as appears by the evidence of the witness Emerson B. Harwood, the consignor shipped flour to the consignees, to be sold, and drew against it for an advance.   That the flour was sent to them with the understanding that the title was to vest in them from the receipt by them of the shipping bill.   The consignees had

Graves *v.* Harwood.

received large amounts of flour from the consignor in the fore part of 1847, upon which they had sustained loss; after which they informed the consignor, that for the future business, if the consignor shipped flour to them and drew upon it, they should expect to do as they pleased with it, and take care of the business at their end of the route, and that the flour should be solely under their direction and control. The load of flour in question was shipped under that arrangement. It appears by the special report of the referee, that the consignor sent a duplicate of the shipping bill by the captain of the boat to the consignees, which was delivered to them by the captain on his arrival with the load of flour at New-York. It follows, therefore, that the defendant remained the absolute owner of the flour until its arrival at its destination, and during the whole time the freight was being earned, and consequently liable to the plaintiff for the freight. That the plaintiff had a lien upon the cargo for the freight makes no difference. It was a right which he might waive, without impairing his remedy by action. He might have delivered the 590 barrels of flour to the consignees, and immediately called upon the consignor for the balance of the freight. He was not bound to pay for the ten missing barrels of flour. Having done so, I doubt very much whether he could sustain any action against the defendant for the money thus paid for them, if the case stopped there, on the ground that it was paid voluntarily and without the defendant's request. But evidence was given tending to show that Clark & Coleman, the consignees, had accounted with the defendant for the whole 600 barrels; and I think the referee was warranted by the evidence in finding as he has done, that they did so account with him. This was an adoption or ratification by the defendant of an unauthorized payment by the plaintiff for him, and for which I think the defendant is liable to the plaintiff in an action for money paid, or money had and received.

It is objected, on the part of the defendant, that parol evidence was improperly received to show an error or mistake in the bill of lading. The mistake to which the parol evidence related,

was in that part of it which stated and admitted the quantity of flour received.

A bill of lading has a twofold aspect, viz. a receipt, and a contract to carry and deliver. It was held in *Barret* v. *Rogers,* (7 *Mass. Rep.* 279,) that a bill of lading was not conclusive evidence as to the condition of the goods shipped. (*See also Cowen & Hill's Notes, p.* 1439, *note* 962.) So far as the bill of lading is a contract, it is undoubtedly conclusive between the parties to it. (*Emery* v. *Holly,* 14 *Wend. Rep.* 26.) But that part of it which is an admission of the number or quantity received, and to which the contracting part relates, I have no doubt may be explained or contradicted, like any other receipt. There is nothing in the nature of the case to take it out of the rule on that subject. It is well settled that an admission of the payment of the consideration money, in a conveyance of land, may be explained or contradicted, provided the nature of the grant is not thereby affected—and that, between the parties to the conveyance. I think the parol evidence in this case to show a mistake in the quantity of flour was properly received.

It is also objected that the action will not lie upon the money counts. I am not able to perceive any objection to sustaining the action for money had and received, or money paid. The defendant has had the benefit of the price paid by the plaintiff for the ten barrels of flour. He is to be deemed to have received the amount in money, which, in equity and justice, belonged to the plaintiff; and there is no reason that I can appreciate, why he should not pay it back to him. I think it in perfect consistency with the theory of the action, to allow the plaintiff to recover in this form of action. (*See Brown* v. *Hodgson,* 4 *Taunt.* 189.) The motion to set aside the report of the referee is denied.