---
Ide *v.* Sadler.
---

---

## IDE and others *vs.* SADLER and others.

In an action upon an instrument signed by the defendants, acknowledging the receipt of a cargo of wheat from H., and agreeing to transport the same from Troy to New-York, at a specified freight, the plaintiffs may prove that although the receipt was given to H., the wheat in fact belonged to them; H. being merely their agent to transact the business, and having no interest in the cargo.

Such evidence neither contradicts, or varies, or explains the writing itself. It merely goes beyond it, to establish a new and independent fact.

Ide *v.* Sadler.

The rule that it is the duty of a shipper to *store* the property shipped, when the consignee refuses to receive it, is inapplicable when the carrier continues to act under the direction of the shipper.

THIS action was brought to recover for the use of the plaintiffs' boats in transporting three loads of wheat from the city of Troy to the cities of New-York and Brooklyn; also damages and demurrage for the detention of said boats at the city of New-York; also for towage, extra dockage and extra services. The question tried was, whether the plaintiffs were entitled to recover for such damages and extra services beyond the price agreed on for carrying the grain. The cause was referred to Job Pierson, Esq., sole referee, who reported in favor of the plaintiff for $140.24. The defendants appealed. The facts sufficiently appear in the opinion of the court.

*D. L. Seymour*, for the plaintiffs.

*J. K. Porter*, for the defendants.

*By the Court*, PARKER, J. The first point made by the defendants is, that the freighter was Horace Harrington, and not the defendants, and the defendants rely, for the establishment of this fact, upon the receipts given by the plaintiffs to Harrington for the wheat, which are claimed to be bills of lading or contracts, binding and conclusive upon the parties and not explainable by parol evidence. All the receipts are similar in form, one being given for each cargo of wheat; the first was as follows: "Rec'd, Troy, Nov. 25, 1845, of Horace Harrington, 2400 bushels wheat, by estimation, on board canal boat ' Torrent,' Troy and Erie line, in good order, which we agree to deliver to Dows & Cary, N. Y., at 5 cents the bushel freight, in like good order, without delay. Bushels 2400 estimated. IDE, COIT & Co., agents,

Troy and Erie Trans."

A mere receipt may be explained by parol evidence; yet if a receipt contain an agreement, condition or stipulation between the parties, it cannot be varied by parol. (1 *Cowen & Hill's Notes*, 216. 6 *Barb.* 458.) These receipts say "received of

Horace Harrington." The plaintiffs do not propose to contradict or vary what is written; but they insist upon the right of proving that Horace Harrington, from whom the wheat was received, was the agent of the plaintiffs, and transacted the business for them. For the purpose of determining this question, it is immaterial whether the writing referred to is called a receipt or a bill of lading. The rule of law applicable is the same in either case. In *Butts* v. *Todd,* (1 *Moody & Rob.* 106,) Tindall, Ch. J., said he was of opinion that, as between the original parties, a bill of lading was merely a receipt.

I see no objection to the plaintiffs' showing that Harrington was their agent. It was neither contradicting or varying or explaining the writing itself. It was merely going beyond it, to establish a new and independent fact. In *Berkley* v. *Watling,* (7 *Adolph. & Ellis,* 29,) Littlefield, justice, held that it might be proved in any case, except where the bill of lading had been transferred to an indorser, for value, that the shipper named in the bill was not the shipper, but that the plaintiffs were, and that he was their agent.

There is another reason why this point is not sustainable. No such point was taken on the trial. On the contrary, the defendants permitted the plaintiffs to show the whole transaction, and to prove, without objection, that the plaintiffs owned the wheat, and made the bargain with Sadler to take it to market, and that all that was done by Harrington was done as the agent of the plaintiffs. Such was the testimony of Harrington himself, and his evidence was uncontradicted. When Samuel H. Waterman was under examination, a general objection was made to his stating the conversation between Ide, Harrington and Sadler about taking the three boat loads of wheat, but it had been already most abundantly shown by the witnesses previously examined. The second objection is, that no claim for demurrage or detention could be sustained, on the evidence. It was clearly proved that Sadler agreed with Ide that there should be no detention; and that there was great delay and detention, which was entirely chargeable to Sadler. Cases are cited to show that it was the duty of the plaintiffs to have stored the

grain, when the consignees refused to receive it. That rule is inapplicable when the carrier continues to act under the direction of the shipper. In neglecting to store the grain when Dows & Cary refused to receive it, and in going from the Atlantic dock to the steam mills and remaining there longer, in consequence of the mode of unloading adopted, the captains of the boats acted entirely under the orders of Sadler and the agents of the defendants.

The third objection is, that the referee erred in permitting the plaintiffs to recover under the common counts. The answer to this is, that no such objection was made upon the trial.

I think the referee decided correctly, and that the report is very satisfactorily sustained by the evidence. The judgment entered on the report must therefore be affirmed.

[ALBANY GENERAL TERM, May 2, 1853. *Watson, Parker* and *Wright,* Justices.]