## Case No. 17,384.

### The WELLINGTON.

[1 Biss. 279; [1] 2 West. Law Month. 523.]

District Court, D. Wisconsin. April, 1859.

AFFREIGHTMENT—BILL OF LADING—STOWAGE ON DECK.

1. Under an ordinary bill of lading the carrier is liable for goods stowed on deck and necessarily jettisoned.

2. Although as a receipt a bill of lading is subject to explanation, and can be affected by parol proof. in so far as it is a contract, this rule does not apply.

[Cited in The Illinois, Case No. 7,005.]

3. Although it is not expressly stated in the bill of lading that all the goods shall be stowed under deck, yet such is its legal construction and effect, and proof of conversations before or at the time of its execution is not admissible to alter it in this respect.

4. If the master wished to stow a part of the goods on deck. he should have made a proper memorandum in the bill of lading, or obtained the written consent of the shipper, or have discriminated in the price of freight.

[5. Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 139, to the point that where a master signs a bill of lading for goods not received, or for more than are received, he acts beyond his authority, and the owner is not liable either to the original shipper, or any assignee of the bill of lading, whether he makes advances on the faith of it, or gives value for it, or not.]

In admiralty. Libellant shipped on board this vessel, at the port of Vermillion, in the state of Ohio, to be delivered at the port of Milwaukee, six hundred and thirty-five barrels of apples. The bill of lading is a clean bill—dangers of navigation only excepted, and duly signed by the master. One hundred and ninety-five barrels of the apples not having been delivered to the consignee, this libel was brought to recover their value. It appeared that this number of barrels had been stowed on deck, and in a storm were necessarily jettisoned. Depositions were offered in evidence to show, that the libellant verbally consented that any barrels which could not be stowed below. might be stowed on deck. It appeared on the part of the libellant. that he gave no directions as to the stowage of his apples. and he had left two days before they were received on board. By the bill of lading the whole number of bar-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

rels was to be delivered to the consignee at Milwaukee, for thirty cents per barrel, full freight.

Wm. P. Lynde, for libellant.
John H. Van Dyke, for respondent.

MILLER, District Judge. [The bill of lading is a receipt, and also a written contract to carry the goods to the port of delivery, and to deliver them in good order, the dangers of navigation excepted.][2] It is well understood, that when goods are stowed on deck, with the consent of the owner, no loss by justifiable jettison can be recovered for, unless the accident, by which they are lost, would have been equally fatal if they had been under deck. Lawrence v. Minturn, 17 How. [58 U. S.] 100; The Waldo [Case No. 17,056].

Between the shipper and the carrier the bill of lading is not conclusive as a receipt.[3] The quantity and condition of the goods receipted for can be proved by parol to vary the bill of lading as a receipt.

The bill of lading does not state in express terms that the six hundred and thirty-five barrels of apples shall be stowed under deck; but this is a condition tacitly annexed to the contract by operation of law, and it is equally binding on the master, and the shipper is entitled to its benefits as a contract, as if it were stated in express terms. And this bill of lading not making distinction as to the amount of freight per barrel, implies a contract to stow the whole number of barrels under deck. Full freight is charged without exception. The parol evidence offered of conversations between the owner and the master before the bill of lading was signed and delivered, respecting the stowing of such barrels as the hold would not receive is inadmissible, as not evidence controlling the contract afterwards reduced to writing and delivered. Nor could such evidence of conversation at the time of the execution and delivery of the written contract be received, to control or vary the bill of lading. whether it expressly stated that all the goods should be stowed under deck or not. In the case of Lawrence v. Minturn [supra] there was a written contract that the article shipped should be placed on deck, [and the shipper did so stow it at his own expense.][2] In the case of The Waldo [supra] a quantity of potatoes were stowed on deck, and being damaged by water were thrown over. Parol proof offered to show consent on the part of the shipper that they should be placed on deck, was rejected. [The court remarked: "The general rule is. that parol evidence cannot be received to contradict, vary. or control a written instrument. It is true, that the bill of lading does not say, in express terms, that the goods shall be stowed under deck. But this is a condition tacitly an-

nexed to the contract by operation of law, and it is equally binding on the master; and the shipper is equally entitled to its benefit, as though it was stated in express terms. The parol evidence is offered, then, to control the legal operation of the bill of lading, and it is as inadmissible as if it were to contradict its words."][2] In Barber v. Brace, 3 Conn. 9, the defendant offered parol testimony, to prove that at the time the bill of lading was executed, there was a verbal agreement to transfer the gin on the sloop's deck. The testimony was rejected, on the ground that the conversation both before and at the time the writing was given was· merged in the written instrument. [It is true that the testimony was afterwards admitted to rebut evidence on· the part of the plaintiff; but the court instructed the jury not to regard it as evidence to discharge the defendant. The verdict was rendered for the defendant on other grounds.][2] In Sayward v. Stevens, 3 Gray, 97, the bill of lading was in the usual form except "seven boxes of shingles on deck." The plaintiff offered to prove by parol that all the articles stowed on deck were so stowed with the defendant's knowledge and assistance. The evidence was rejected. In the case of Creery v. Holly, 14 Wend. 26, it appears that ninety barrels of wrought iron shipped on a clean bill of lading, were placed on deck, and thrown overboard in a storm. Parol evidence of consent of the shipper that the goods might be so stowed was not received. The court, by Nelson, C. J., remarks, "It is true that nothing is said in the bill of lading as to the manner of stowing away the goods, whether on or under deck; but the case concedes that the legal import of the contract, as well as the understanding of the usage of merchants, imposes upon the master the duty of putting them under deck, unless otherwise stipulated; and if such is the judgment of the law upon the face of the instrument parol evidence is as inadmissible to alter it as if the duty was stated in express terms. It was a part of the contract. 8 Johns. 189. It seems to me it would be extremely dangerous and subject to the full force of every objection, that excludes the admission of this species of evidence, to permit any stipulation, express or implied, in those instruments, when free from ambiguity, to be thus varied; and besides, from the high character given to those instruments in commercial business would expose the insurer and purchaser to frauds." In Vernard v. Hudson [Case No. 16.921]. a witness was permitted to testify to a verbal agreement. that a portion of the goods might be stowed on deck. The court declared the implied condition of a clean bill of lading, that the goods should be stowed under deck. but thought the evidence admissible, as not contradicting or varying an express written contract. The court in commenting on the case says: ["I take it to be very clear. when goods are shipped under the common bill of lading, it is presumed that they are shipped

---

[2] [From 2 West. Law Month. 523.]

[3] Abb. Shipp. 320, and cases cited; Id. 324, and cases cited; Goodrich v. Norris [Case No. 5,545]; Manchester v. Milne [Id. 9.006]; Zerega v. Poppe [Id. 18.213]; Baxter v. Leland [Id. 1,124]; Warden v. Greer. 6 Watts, 424; Barrett v. Rogers, 7 Mass. 297.

to be put under deck, as the ordinary mode of stowing cargo. The presumption may be rebutted by showing a positive agreement between the parties that the goods are to be stowed on deck, or it may be deduced from other circumstances,—such, for example, as the goods paying such freight only. The admission of proof to this effect is perfectly consistent with the rules of law, for it neither contradicts nor varies anything contained in the bills of lading, but it simply rebuts a presumption arising from the ordinary course of business. Now, although one witness has sworn to such an agreement, he is contradicted directly by as positive denials on the part of the agent who shipped the goods.][2] There is the clear fact, that a full under-deck freight is stipulated for in the bill of lading, a fact certainly not easily reconcilable with the supposition that they were to be carried on deck. So that the preponderance of the evidence decidedly is that there was no such agreement to carry the goods on deck. If it had existed, one of two things ought to have occurred, either that under deck freight should not have been payable, or that there should have been some written memorandum on the bill of lading, to repel the inference from a full freight being stipulated for." In the case of Knox v. The Ninetta [Id. 7,912], a cargo of wheat was shipped on a clean bill of lading. It was alleged on the part of libellant, that a parol agreement was also made, that no other cargo should be received on board, and that the voyage should be made directly and without deviation. Evidence of this parol agreement was received by the court, on the ground that the bill of lading was a mere receipt. But it seems to me, that parol evidence was proper in that case to show the deviation. The verbal agreement was nothing more than an acknowledgment on the part of the master of his implied duty. And if by receiving additional cargo on deck, the cargo of wheat became damaged, the liability of the vessel had attached without the verbal agreement.

If the shipper of his goods was warned as to the manner in which they would be stowed, he cannot maintain an action occasioned by bad stowage; or if he interfered and directed in the manner of stowing. Meyer v. White, 32 Eng. Ch. R. 429; Fland. Shipp. §§ 215, 201. But that is not in this case. The bill of lading was made out and delivered to the owner, who had left for his home two days before the apples were received on board. There is no complaint of bad stowage. The apples stowed under deck were carried safely and delivered. The master should have made a memorandum on the bill of lading. or have required the written consent of the shipper on the bill, that the number of barrels not receivable under deck might be shipped on deck,—or have discriminated on the bill as to the price of freights of the barrels to be shipped on deck. Here was a clean bill of lading. the transfer of which would vest the title to six hundred and thirty-

five barrels of apples, in a purchaser. [From the examination I have given the question, I conclude upon principle and authority, both that parol evidence of an agreement or consent of the shipper, that his goods may be stowed on deck, cannot be received where a clean bill of lading is given and full freight is charged, as in this case. * * * There was no necessity for removing any portion of the under-deck cargo. I am satisfied that the vessel is liable for the goods of this libellant that were not delivered according to the bill of lading.][2] The transfer of goods shipped, by indorsement of bills of lading has become so common, that the interests of commerce require that such instruments should not be controlled by parol evidence. Decree for libellant.

NOTE. That a bill of lading in the usual form containing no stipulation that the goods shipped are to be carried on deck, implies a contract that they shall be carried under deck, and that parol evidence to the contrary will not be received, is also affirmed in Creery v. Holly, 14 Wend. 26; Sayward v. Stevens, 3 Gray, 97. In so far as a bill of lading is a contract, parol evidence is not admissible to vary its terms. Bradley v. Dunipace, 1 Hurl. & C. 521; Butler v. The Arrow [Case No. 2,237]. Evidence of mistake in not striking out clause in a receipt limiting the liability of the carrier admitted in Choteaux v. Leech. 18 Pa. St. 224. As far as respects agreement to carry and deliver, a bill of lading must be construed according to its terms. Portland Bank v. Stubbs, 6 Mass. 422; Barrett v. Rogers. 7 Mass. 297; Price v. Powell, 3 N. Y. 322; Ellis v. Willard, 9 N. Y. 529; Bradstreet v. Heran [Case No. 1,792]; Zerega v. Poppe [Id. 18,213]. Where, however, the bill of lading specifies that the freight is to be shipped on deck. and contains the usual clause. "dangers of navigation excepted," the shipper cannot recover if it is necessarily jettisoned. The Milwaukee Belle [Id. 9,627]. Where goods stowed on the main deck of a propeller were necessarily jettisoned, the owner was held entitled to the benefit of general average, and owner of vessel not liable as common carrier. Gillett v. Ellis, 11 Ill. 579.

Contra: In Johnson v. Crane, 1 Kerr. 356. the supreme court of New Brunswick held that the master of a ship who signed the usual bill of lading, was not liable for a loss by the jettison of goods laden on deck with the knowledge and consent of the shipper and consignee. See. also, Gould v. Oliver. 4 Bing. (N. C.) 142; Story, Bailm. § 530. and cases there cited; 1 Pars. Shipp. & Adm. 266. 267; Id. 352-357, and many authorities there cited.

WELLINGTON. The (HINDLEY v.). See Case No. 6,513.

[2] [From 2 West. Law Month. 523.]

[2] [From 2 West. Law Month. 523.]