## PATRICK TIERNEY *vs.* THE NEW YORK CENTRAL AND HUDSON RIVER RAIL ROAD COMPANY.

Where the property delivered to a carrier for transportation is of a character recognized among carriers and forwarders as *perishable*, it requires particular attention, and a greater degree of care than attaches to such as is deemed non-perishable.

A quantity of cabbages were received from the plaintiff, by the defendant, at East Albany, for transportation to New York, on the 6th and 7th of January. They were in the car, ready for the freight train, at 10.40 p.m.; from which place freight trains were accustomed to leave for New York every few hours, the running time being, ordinarily, about eleven hours. The car was left at East Albany a considerable time, although several other trains

Tierney *v.* N. Y. Central and Hudson River R. R. Co.

were sent over the road in the meantime; and it did not reach New York until the 10th or 13th of January; when the cabbages were frozen, and nearly destroyed. *Held*, that the judge properly instructed the jury that the property having been delivered to, and accepted by, the defendant as perishable, it became its duty to forward it by the first train; unless there was such a pressure and accumulation of freight of a similar kind, which had previously arrived, as to prevent such immediate action.

*Held*, also, that if there had been no accumulation of freight for transportation, beyond the ordinary capacity of the road, all of it should have been forwarded in the order of its arrival; but if any delays were necessary, by reason of unusual accumulation, the perishable property should be forwarded, in preference to that which was non-perishable.

*Held*, further, that whether the plaintiff should have guarded the property by other means than those employed, was a subject for the consideration of the jury, holding in mind the character of the property; the state of the weather; the condition of the car in which the property was to be forwarded; the distance from its destination; and the usages of prudent men under like circumstances.

Also *held*, that the plaintiff took all risks of injury to the property from frost, which would have happened had it been forwarded immediately; and the defendant was to be held liable only for such damage as was occasioned by frost, as the result of inexcusable delay.

The plaintiff signed a receipt for the property, in New York, as "in good order." *Held*, that it was competent for him to show the circumstances under which this receipt was given; and that he might prove that he wanted to sign a receipt for the load as "in poor condition," but was not allowed to do so.

That he was not concluded by the terms of the receipt. That it was not of binding force as a contract; that, at most, it was but an admission, and therefore susceptible of explanation and correction by parol evidence.

*Held*, also, that evidence of what the plaintiff could have obtained in the public market, for the cabbages, on the morning of their arrival in New York, was evidence bearing on the question of value, and therefore admissible on that question.

APPEAL from an order denying a motion, made upon the minutes, for a new trial; and motion for a new trial on exceptions taken at the trial and ordered to be heard at a General Term in the first instance.

The action was to recover damages arising from the negligence of the defendant as a common carrier, in transporting a quantity of cabbages from Albany to New York, in consequence of which negligence the cab-

bages became frozen. The plaintiff recovered a verdict. (*S. C., briefly reported*, 10 *Hun*, 569.)

*A. J. Colvin*, for the plaintiff.

*Matthew Hale*, for the defendant.

BOCKES, J. It is quite plain, I think, that a case was made for the jury, on the evidence submitted. The property delivered for transportation was of a character recognized among carriers and forwarders, as perishable ; hence required particular attention, and a greater degree of care than would attach to such as is deemed non-perishable. It was received on the 6th and 7th of January ; and due and proper diligence required that it should have been at once forwarded to the city of New York, its place of destination. It was in the car, ready for the freight train at East Albany at 10.40 p.m.; from which place those trains were accustomed to leave for New York every few hours. The running time being, ordinarily, about eleven hours. The car was left at East Albany for a considerable time, notwithstanding several trains were sent over the road, and did not reach New York until the 10th, and as the plaintiff testified, until the 13th of January. In the meantime the property was frozen, and nearly destroyed. The defendant endeavored to explain and excuse the delay, by showing an accumulation of freight at East Albany ; but the evidence in support of this hypothesis was inconclusive to an extent, certainly, which made it proper to submit the case to the jury, on the proof. The learned judge properly held, and instructed the jury that inasmuch as the property had been delivered to, and accepted by, the company as perishable, it became its duty to forward it by the first train, unless there was such a pressure and accumulation of a similar kind of freight to be transported, and which had previously arrived, as to

prevent such immediate action. This instruction to the jury was sound in law. The rule laid down was a reasonable and fair one. It imposed no unjust obligation upon the defendant. If then there had been no accumulation of freight for transportation beyond the ordinary capacity of the road, all of it should have been forwarded in the order of its arrival; but if any delays were necessary, by reason of unusual accumulation, the perishable property should be forwarded in preference to that which was non-perishable. So the judge was right in holding that the defendant was bound to forward the car containing the plaintiff's perishable property, in case there was a pressure of freight cars to be forwarded, in preference to those which contained non-perishable property.

It is urged that the plaintiff was negligent in omitting to protect the property from frost; but this question was also for the jury, it not being shown, indisputably, that he omitted the usual and proper precautions. Whether he should have guarded the property by other means than those employed, was a subject for the consideration of the jury, holding in mind the character of the property; the state of the weather; the condition of the car in which it was to be forwarded; the distance from destination; and the usages of prudent men under like circumstances. But I think the defendant has no possible cause of complaint as to the manner in which the case was given over to the jury on this branch of it; for the court held that the plaintiff could make no claim for any injury resulting from the freezing of the property, had it been forwarded immediately after it was delivered for transportation — or more precisely, if forwarded and delivered at its destination with due diligence. The jury were instructed with precision and distinctness, that the plaintiff took all risks of injury to the property from frost, which would have happened to it, had it been immediately forwarded; and that the de-

fendant was to be held only for such damage as was occasioned by frost, as the result of inexcusable delay.

It appeared in evidence that a placard, giving notice that the car contained perishable property, and that it must be run through to New York by the first train, was attached to it when loaded; and an employé of the company stated to the plaintiff at the time of loading, that the car would be in New York the next morning. This statement was admitted in evidence, against objection; and the court was requested to charge the jury that neither the placard, nor such statement, constituted any part of the contract for transportation. The court charged as requested; but held, in substance and effect, that both might be considered by the jury in determining the question of defendant's liability. In this there was no error. The placard and statement evidenced no additional obligation or duty, beyond that imposed by the contract for transportation. It was competent to prove that such a placard was attached to the car. And as regards the statement by the defendant's employé, that was innoxious, as all the evidence in the case went to show, and did show, indisputably, that the car, if despatched according to the understanding and intention of the parties, and barring accidents, would arrive in New York the following morning. The evidence objected to, with all the significance given it under the remarks of the court, could not have worked an injury to the defendant's rights.

The plaintiff signed a receipt for the property in New York as "in good order." It was competent for the plaintiff to show the circumstances under which this receipt was given; and on this point he testified that he wanted to sign for the load "in poor condition," but was not allowed to do so. The court held that he was not concluded by the terms of the receipt. In this there was no error. The receipt was not of binding force as a contract; but at most was but an admission; and there-

Tierney *v.* N. Y. Central and Hudson River R. R. Co.

fore susceptible of explanation and correction by parol evidence. (*Ellis* v. *Willard*, 9 *N. Y.*, 529.) The plaintiff was allowed to testify, against objection, that he contracted for a sale of the cabbages at Washington market, in New York, on the morning of the 8th January, at from sixteen to twenty dollars a hundred. He also testified that he had dealt in the property and was acquainted with its market value; that the men with whom he contracted were regular dealers at that market, which was the greatest produce market in New York; and further, that cabbages were worth from sixteen to twenty-five dollars a hundred, according to their quality. What he could obtain from dealers for the cabbages in that public market was evidence bearing on the question of value. This was admissible on that question. Certainly it was not hurtful in view of the other evidence as to value which stood wholly undisputed in the case.

The question of amount of damages was for the jury, on the proof; and the verdict is not without sufficient evidence to give it vindication. It cannot be said to be against evidence, nor against the weight of evidence.

Other questions, besides those above considered, were discussed on the argument, but as is believed, none of them require particular comment.

The order appealed from should be affirmed; and the plaintiff · is entitled to judgment on the verdict, with costs.

*Judgment accordingly.*

LEARNED, P. J., and BOARDMAN, J., concurred.

[THIRD DEPARTMENT, GENERAL TERM at Elmira, May, 1877. *Leonard, Bockes* and *Boardman,* Justices.]